**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

JOSEPH GROW,

    Plaintiff,

v.                                     Case No.: 3:06cv11/MCR/MD

FIRST NATIONAL INSURANCE
COMPANY OF AMERICA,

    Defendant.

_____/

**O R D E R**

      This case involves a dispute over damage to commercial property owned by Plaintiff Joseph Grow and insured by Defendant First National Insurance Company of America ("First National"). When the parties could not agree on the amount of Grow's loss, First National invoked its right to appraisal under the insurance contract, following which Grow filed suit in state court for breach of an insurance contract. First National then removed the case to this court, at which time the court entered an order of abatement pending appraisal. Subsequently, a court-appointed umpire determined the amount of Grow's loss and First National promptly paid the appraisal award. First National then filed the pending second motion to dismiss with prejudice, to which Grow has responded. For the reasons that follow, the motion to dismiss is GRANTED and plaintiff's complaint is dismissed with prejudice.

**Background**

      On or about September 15, 2004, Hurricane Ivan damaged commercial property owned by Grow and insured by First National. Grow timely filed a proof of loss estimating the cost of repair to be $93,288.22. After assessing Grow's claim, First National accepted coverage and initially paid Grow $3,802.99. First National later amended its determination and paid Grow an additional $15,449.68 for a total of $19,252.67. Grow objected to First National's determination and the parties ultimately could not agree on the amount of loss.

As a result, First National invoked its right to appraisal, per the terms of its insurance contract with Grow, by letter dated August 29, 2005.[1] In the same letter, First National also informed Grow of its chosen appraiser and asked Grow to respond with his selected appraiser.  Grow, however, did not respond to First National's letter; as a result, First National sent Grow a second letter on September 23, 2005, again invoking its right to appraisal.  This letter warned that Grow's failure to respond by October 3, 2005, would be interpreted as an indication Grow would not be pursuing the matter further.  First National subsequently sent Grow a third letter on October 7, 2005, informing him that because he had not responded to First National's letters his file would be closed.

On December 6, 2005, over three months after First National invoked its right to appraisal, Grow filed a complaint for breach of an insurance contract in the Circuit Court of Escambia County, Florida, asking for damages, prejudgment interest, consequential and incidental damages, costs of the action, and attorney's fees under § 627.428, Florida Statutes.  First National timely removed the case and filed a motion to dismiss or abate the litigation pending appraisal.  The parties agreed to resolve the matter through the appraisal process and on February 7, 2006, the court entered an order abating the matter pending resolution of the appraisal process.

During the appraisal process it became clear that the parties' appraisers could not agree on an umpire and thus the parties stipulated to the court's appointment of an umpire,

---

[1] The appraisal provision of Grow's insurance contract states:

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and the amount of loss.  If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.  Each party will

(a) Pay its chosen appraiser; and
(b) Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

which the court appointed on October 3, 2006.[2] On January 19, 2007, the court-appointed umpire determined that Grow was entitled to $83,517.00. In response, First National paid Grow $64,014.33 (representing the appraisal award minus Grow's deductible and the amount First National had already paid).

Following payment of the appraisal award, First National filed the pending second motion to dismiss stating that the appraisal process settled the parties' dispute over the amount of loss and thus no triable issues remained for the court's consideration.[3] Grow responded and objected to First National's motion arguing that the issue of attorney's fees is still pending.

**Discussion**

"Under Florida law, each party generally bears its own attorneys' fees unless a contract or statute provides otherwise." Pepper's Steel & Alloys, Inc. v. U.S., 850 So.2d 462, 465 (Fla. 2003) (citations omitted). Section 627.428, Florida Statutes, is such a statute. Id. That statute provides in relevant part:

> Upon the rendition of a judgment . . . by any of the courts of this state against an insurer and in favor of any named . . . insured . . . under a policy . . . executed by the insurer, the trial court or, in the event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured . . . a reasonable sum as fees or compensation for the insured's . . . attorney prosecuting the suit in which the recovery is had.

Fla. Stat. Ch. 627.428. Because this statute operates as a penalty in derogation of common law it must be strictly construed. Liberty Nat'l Life Ins. Co. v. Bailey ex rel. Bailey, 944 So.2d 1028, 1030 (Fla. 2d DCA 2006) (citing Hartford Acc. & Indem. Co. v. Smith, 366 So.2d 456, 457 (Fla 4th DCA 1978)). If, however, "the dispute is within the scope of

---

[2] The selected umpire informed the court that he no longer served as an umpire. Thereafter, the parties filed separate motions to appoint another umpire, which the court granted on December 11, 2006.

[3] First National failed to include the certification required by Local Rule 7.1(B) with its motion to dismiss. N.D. Fla. Loc. R. 7.1(B). Based on Grow's response to the motion, however, the court finds that a conference between the parties would not have resolved the issues raised in the motion to dismiss. First National's counsel is advised to consult and follow the local rules more closely in future proceedings in this court.

Section 627.428 and the insurer loses, the insurer is always obligated for attorney's fees" regardless of whether it acted in good faith.  Ins. Co. of North America v. Lexow, 602 So.2d 528, 531 (Fla. 1992); see also Tristar Lodging, Inc. v. Arch Speciality Ins. Co., 434 F.Supp.2d 1286, 1295 (M.D.Fla. 2006), aff'd 215 Fed.Appx. 879 (11th Cir. 2007) ("[T]he law is clear that if Plaintiff was compelled to sue because the insurance company wrongfully caused it to resort to litigation, fees must be awarded if the policy is paid after suit.").

The legislative purpose behind § 627.428 is to discourage insurance companies from contesting valid claims and to reimburse successful insureds for their attorney's fees when they are compelled to defend or sue in court to enforce their insurance contracts. Pepper's Steel & Alloys, 850 So.2d at 465; Tristar, 434 F.Supp.2d at 1295 ("The Statute penalizes insurers for wrongfully causing its insureds to resort to litigation to resolve a conflict.").  The statute is also intended to encourage insurance companies to resolve disputes with their insureds without judicial intervention.  Tristar, 434 F.Supp.2d at 1298; Nationwide Prop. & Cas. Ins. v. Bobinski, 776 So.2d 1047, 1049 (Fla. 5th DCA 2001) ("[I]t maintains the better policy of this state to encourage insurance companies to resolve conflicts and claims quickly and efficiently without judicial intervention. Arbitration and appraisal are alternative methods of dispute resolution that provide quick and less expensive resolution of conflicts.").  Finally, the statute is intended to "place the insured . . . in the place she would have been if the carrier had seasonably paid the claim or benefits without causing the payee to engage counsel and incur obligations for attorney's fees," (Travelers Indem. Ins. Co. of Illinois v. Meadows MRI, LLP, 900 So.2d 676, 679 (Fla. 4th DCA 2005)), and "level the playing field so that the economic power of insurance companies is not so overwhelming that injustice may be encouraged because people will not have the necessary means to seek redress in the courts."  Ivey v. Allstate Ins. Co., 774 So.2d 679, 684 (Fla. 2000).

To recover attorney's fees under § 627.428 there must be a judgment in favor of the insured.  Settlement of a claim or payment of an appraisal determination can constitute a confession of judgment.  Pepper's Steel & Alloys, 850 So.2d at 465 ("In Florida, the

payment of a settlement claim is the functional equivalent of a confession of judgment or a verdict in favor of the insured."); see also Magnetic Imaging Systems, I, Ltd. v. Prudential Prop. & Cas. Ins. Co., 847 So.2d 987, 990 (Fla. 3d DCA 2003) ("Where an insurer makes payment of a claim after suit is filed, but before a judgment is rendered, such payment operates as a confession of judgment, entitling the insured to an attorney's fee award."). This "confession of judgment doctrine" exists so that insurers cannot escape paying attorney's fees by settling after they are sued but before final judgment. Gibson v. Walker, 380 So.2d 531, 533 (Fla. 5th DCA 1980) (citing Cincinnati Ins. Co. v. Palmer, 297 So.2d 96 (Fla. 4th DCA 1974)). Under this doctrine, an insured may recover attorney's fees incurred in reaching a settlement, compelling arbitration or appraisal, or conducting an appraisal. Pepper's Steel & Alloys, 850 So.2d at 465 (citing United States v. Pepper's Steel & Alloys, 289 F.3d 741, 743 (11th Cir. 2002)) (settlement); Latin Am. Prop. & Cas. Ins. Co. v. Pastor, 561 So.2d 1302, 1303 (Fla 3d DCA 1990) (compelling arbitration); Meadows, 900 So.2d at 679 (conducting an appraisal).

Attorney's fees are not warranted, however, where the insurer pays the appraisal award before the insured files suit. Bobinski, 776 So.2d at 1048-49. Further, attorney's fees are not warranted where the insurance company did not wrongfully withhold the insured's benefits. Tristar, 434 F.Supp.2d at 1300 ("[A]bsent a showing that the benefits were wrongfully withheld, counsel is in no position to claim a denial of coverage, and thus, no attorney's fee is properly awardable."); see also Bassette v. Standard Fire Ins. Co., 803 So.2d 744, 746 (Fla. 2d DCA 2001) ("[T]he purpose of section 627.428 is to penalize an insurance company for wrongfully causing its insured to resort to litigation in order to resolve a conflict with its insurer when it was within the company's power to resolve it."). Finally, attorney's fees should not be awarded when the insurance company "timely participated in the appraisal and paid the award without the need for court intervention." Federated Nat'l Ins. Co. v. Esposito, 937 So.2d 199, 200 (Fla. 4th DCA 2006).

In this case, the court has not entered a judgment in Grow's favor, and there is no motion to confirm the appraisal award. Notwithstanding, Grow argues that First National's payment of the appraisal award constitutes a confession of judgment and thus an

attorney's fee award is warranted because Grow filed suit before First National paid the appraisal award. In making this argument, Grow relies heavily on the holding in Meadows, in which the insured was awarded attorney's fees when it filed suit before the insurer paid the appraisal award. Meadows, 900 So.2d at 676-77.

The facts in Meadows are distinguishable from those in the present case. In Meadows there was a lengthy four-month investigation to determine "exclusively whether the cause of the loss was a covered loss." Meadows, 900 So.2d at 677. Further, Meadows "attempted to resolve any differences without resorting to formal legal action," which led the appellate court to conclude that "it is entirely possible that [the insurer's] conduct and participation in the appraisal was affected by Meadows' representation of counsel and the threat of what ultimately became a pending lawsuit." Id. at 679 (citing Ajmechet v. United Auto. Ins. Co., 790 So.2d 575, 575 (Fla 3d DCA 2001)). The court in Meadows also found that "the suit and any accompanying legal work at bar was not merely a means to an end", but rather that Meadows needed to retain counsel in order to compel the insurer to accept coverage as well as to protect Meadows' rights throughout the appraisal by "filing a declaratory action to determine the procedures for conducting the appraisal and the entitlement to attorney's fees, and a later amendment to add claims for indemnification and bad faith." Id. at 678-79; see also Ajmechet, 790 So.2d at 576 (finding that attorney's fees are appropriate where the payment of the claim was "obviously effected [sic] by the law suit").

In this case, unlike in Meadows, First National did not contest coverage. Moreover, there is no evidence that Grow engaged in the appraisal process at all before filing suit or that First National was even aware of Grow's intent to file a lawsuit at the time it invoked its right to appraisal. Finally, Grow did not have to file a lawsuit to compel First National's participation in the appraisal process. To the contrary, it was First National who invoked appraisal over three months before suit was filed, who voluntarily participated in the appraisal process, and who timely paid the appraisal award after the umpire made his determination. In fact, Grow's lawsuit was promptly abated so that the parties could engage in the appraisal process previously invoked by First National. In sum, there is no

evidence from which the court can reasonably conclude that Grow needed to retain counsel and/or file a lawsuit in order to compel First National to comply with its obligations under the contract.[4]

The court finds the facts in this case more similar to those in Tristar and Esposito than Meadows. In both cases the court found that the confession of judgment doctrine did not apply and attorney's fees were not justified.[5] The court in Tristar declined to adopt the insured's broad interpretation of § 627.428, similar to that proposed by Grow, that a plaintiff is always entitled to attorney's fees "whenever a Plaintiff sues an insurer and money is later paid." Tristar, 434 F.Supp.2d at 1297. Instead, the court found that attorney's fees are warranted only in cases where the insurance company has wrongfully withheld the insured's benefits. Id. at 1300. Because the insurer in that case had already paid the insured a substantial amount for its damages and was in the process of adjusting or seeking appraisal on the remaining claims, the court found that the insurer had acted in accordance with its policy and thus had not wrongfully withheld the insured's benefits. Id. Similarly, the court in Esposito declined to award attorney's fees because the insured did not have to take action to compel the insurance company to pay; instead the insured filed suit even though the insurer was complying with the terms of its insurance contract providing for alternative dispute resolution. Esposito, 937 So.2d at 200-201. The court stated it could not "fault the insurer for complying with the terms of its insurance contract by participating in the appraisal process and paying in a timely manner." Id. at 201.

In this case, First National accepted coverage and paid a portion of Grow's claim. When Grow objected to First National's adjustment of his claim and the parties could not agree on the amount of Grow's loss, First National invoked its right to appraisal. Grow has

---

[4] Grow argues that a lawsuit was necessary in order to appoint a neutral umpire. At the time Grow filed his lawsuit, however, there was no indication that a lawsuit would be necessary to appoint an umpire, because Grow had not named his appraiser or participated in the appraisal process. The court will not speculate as to the course of this litigation and the fees incurred if Grow had timely participated in the appraisal process as required by the insurance contract.

[5] The courts in Tristar and Esposito both considered the holding in Meadows and distinguished the case on grounds similar to those discussed in this order. See Tristar, 434 F.Supp.2d at 1299-1300; Esposito, 937 So.2d at 201.

presented no evidence indicating that First National was unwilling to pay an appraisal award. To the contrary, once the umpire made his determination, First National paid Grow within a month. First National, therefore, did not wrongfully withhold payment of Grow's insurance benefits. See Progressive Express Ins. Co. v. Weitz, 218 Fed.Appx. 846 (11th Cir. Feb. 16, 2007) ("Since [the insurer] stood read to arbitrate and pay the arbitration award, it did not wrongfully withhold payment of the proceeds of the policy . . . ."). Rather, like the insurer in Esposito, First National was exercising its rights under the terms of its insurance contract with Grow as to the procedures to take when there is a disagreement concerning the amount of loss.

The court's finding is consistent with § 627.428's legislative purpose because it encourages parties to engage in alternative dispute resolution rather than racing to the courthouse in order to support a later request for attorney's fees. See Esposito, 937 So.2d at 202. Adopting Grow's interpretation that insureds are always entitled to attorney's fees if they file suit before the appraisal award is paid would have the perverse effect of encouraging insureds to seek relief from the courts immediately without allowing the adjustment or appraisal process to play out. See Tristar, 434 F.Supp.2d at 1297-98 (finding that adopting a broad interpretation of § 627.428 would encourage "every policy-holder to sue whenever a claim is contemplated, because, regardless of whether the claim is eventually adjusted downward or paid in full, attorney's fees would automatically result"). This would lead to unnecessary litigation in cases where insurers are willing to participate in the appraisal process without court action and would penalize insurers for exercising their rights under their insurance contracts. See id. at 1298 ("[T]here is a fundamental due process concern in finding that an insurance company which appropriately pays a valid claim according to the Policy terms must still pay attorney's fees, because a claimant sued it to do what it was already in the process of doing.").[6]

---

[6] The court does not foreclose the possibility that under different facts Grow may have been entitled to attorney's fees. As stated by the court in Tristar, attorney's fees may be appropriate if the insurance company unreasonably prolongs the adjustment or appraisal process. See Tristar, 434 F.Supp.2d at 1300 ("The decision is not to be interpreted as encouraging insurance companies to engage in lengthy adjustment processes and the Court cautions that an unreasonably long adjustment process can well result in a delay of payment sufficient to constitute a breach."). There is no evidence here, however, that First National was

The court's finding is also consistent with the parties' intent as reflected in the insurance contract. While Grow argues that he was forced to incur the costs of appraisal, such expenses were contemplated by the parties when they signed the insurance contract. The contract stipulated that if the parties could not agree on the amount of loss, either party could invoke the right to appraisal and the parties would each bear the cost of their personal appraiser and would divide the cost of the umpire and any other expenses of the appraisal equally. Grow and First National agreed to these costs when they entered into the insurance contract and Grow should not be relieved of his contractual obligations merely because he elected to hire counsel and file suit.

Accordingly, it is ORDERED that First National's Second Motion to Dismiss (doc. 48) is GRANTED and Grow's complaint is dismissed with prejudice. The Clerk of Court is directed to CLOSE this case.

DONE AND ORDERED on this 11th day of January, 2008.

        s/ *M. Casey Rodgers*
        **M. CASEY RODGERS**
        **UNITED STATES DISTRICT JUDGE**

---

attempting to delay the appraisal process. To the contrary, when Grow did not respond to First National's first letter invoking appraisal, First National sent two additional letters attempting to initiate the appraisal process. Cf. Tooles v. Safeco Ins. Co., 2007 WL 45749, *3 (M.D. Fla. Jan. 5, 2007) (unpublished) (distinguishing Tristar on the basis that Safeco was not in the process of adjusting plaintiff's claim and "did not participate in the appraisal process–for at least five weeks past its deadline and at least seven weeks after suit was filed.").

3:06cv11/MCR/MD